## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KACEY HUDSON**, | ) | |
| | ) | |
| *Plaintiff,* | ) | **CIVIL ACTION NO**. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **AIMBRIDGE HOSPITALITY, LLC** | ) | |
| **AND INTERSTATE MANAGEMENT** | ) | |
| **COMPANY, LLC** | ) | |
| | ) | |
| *Defendants.* | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, Plaintiff, Kacey Hudson ("Plaintiff" or "Ms. Hudson"), by and through undersigned counsel, hereby submits her Complaint against Aimbridge Hospitality, LLC ("Aimbridge") and Interstate Management Company, LLC ("Interstate").

## INTRODUCTION

1.

Plaintiff Kacey Hudson, by and through her attorney, brings this action against Aimbridge and Interstate for violations of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violations of 42 U.S.C. § 2000e et seq., Pregnancy Discrimination Act of 1978, Americans with Disabilities Act of 1990, and violations of 42 U.S.C. § 1981 et seq. ("Title VII").

1

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress providing for the protection of civil rights; (ii) the ADA, and (iii) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.

Defendants are an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over Defendants because they conduct substantial business within the state of Louisiana, including within this judicial district, and the alleged discriminatory acts occurred within this jurisdiction. Defendants are both a for-profit corporation doing business in Louisiana. At all times relevant, Aimbridge operated its business within the State of Louisiana.

5.

Defendants operate their businesses within the Eastern District of Louisiana. All actions and inactions by Defendants alleged herein occurred within the Eastern District of Louisiana.

2

Venue in this district is proper for the Defendants pursuant to 28 U.S.C. § 1391(b) & (c).

## PARTIES

6.

Plaintiff Kacey Hudson is an African American, Jamaican female who was pregnant during the time of these allegations. At all relevant times, Plaintiff has been a resident of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7.

Upon information and belief, Aimbridge and Interstate are a third-party management company engaged in managing hotels. At all relevant times, Defendants have met the definition of an "employer" under all applicable statutes.

## FACTS

8.

Aimbridge is a privately owned company that manages hotels throughout Louisiana that employees about 11,000 individuals across the United States, including Louisiana. Interstate is a privately owned company that manages hotels throughout Louisiana that employees about 36 individuals across the United States, including Louisiana.

9.

Aimbridge and Interstate operate as joint employers for Plaintiff. Both Defendants were involved in the employment relationship and share responsibilities regarding Plaintiff's working conditions and actions that led to her discrimination. Defendants Aimbridge Hospitality and Interstate Management exercised significant control over Plaintiff's terms and conditions of employment. Plaintiff's utilized Aimbridge's Associate Handbook, HR services, and employee benefits during her employment. Interstate and Aimbridge shared control over Plaintiff's work

3

and terms of employment. Both Defendants shared the ability to hire, fire, or discipline Plaintiff.

10.

The Defendants, operate a branch of its company at 226 Carondelet Street, New Orleans, LA 70130.

11.

On or about February 26, 2023, Plaintiff started her employment with Defendants as a Housekeeping Supervisor. Before being hired, Plaintiff was interviewed by Assistant Director of Housekeeping Mary Bovia, who disclosed that she anticipated being promoted to Director of Housekeeping. Following her promotion, Assistant Director Bovia expressed her intention to promote Plaintiff to the role of Assistant Director of Housekeeping.

12.

After Plaintiff was hired, she had a conversation with Assistant Director Bovia regarding a former Jamaican employee. As the discussion progressed, Plaintiff realized Assistant Director Bovia was referring to her sister and informed her of this connection. Assistant Director Bovia then admitted she was unaware that Plaintiff was of Jamaican descent and stated that if she had known, she would not have hired her.

13.

Plaintiff inquired about Assistant Director Bovia's rationale. Assistant Director Bovia responded by sharing that her sister's husband, who is Jamaican, has been bullying her son because he is homosexual. Assistant Director Bovia holds the belief that Jamaican culture harbors negative attitudes towards homosexuals. Plaintiff reassured Assistant Director Bovia that she does not share such views towards individuals based on their sexual orientation.

14.

4

In support of her allegation of hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, Ms. Hudson further alleges:

15. Plaintiff is a member of a protected class, an African American and Jamaican woman.

16. Defendants failed multiple times to provide Plaintiff a safe environment. Plaintiff has issued many complaints to Defendants for issues with harassment and discrimination. Despite Defendants' obligation to provide a safe and respectful workplace, Plaintiff experienced ongoing harassment.

17. On March 31, 2023, Plaintiff received a verbal warning for excessive unscheduled absences from March 3 to March 5, 2023. Prior to disclosing her Jamaican ethnicity, Plaintiff informed Assistant Director Bovia that she had suffered a severe allergic reaction that required hospitalization, but she planned to report to work. Although Plaintiff's doctor advised her to take time off to rest, Plaintiff expressed her desire not to miss work.

18. Assistant Director Bovia instructed Plaintiff to follow her doctor's advice and assured her that she would not be penalized. However, after learning of Plaintiff's national origin, Assistant Director Bovia issued a verbal warning for the absences nearly four weeks after the violations.

19. On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was not promoted to become her assistant as originally informed prior to Plaintiff disclosing her national origin. Plaintiff's verbal warning in her probationary period was an underlying reason for Defendants denying Plaintiff's promotion.

20. Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are

rented to customers. However, after Director Bovia became aware of Plaintiff's national origin and ethnicity, Plaintiff was subjected to numerous unfounded complaints. Rooms inspected by Plaintiff were allegedly the subject of customer complaints, claiming the rooms were not clean and that obvious items, such as clothing, had been left in plain sight. On some occasions, Plaintiff was informed of customer complaints about a specific room, only to discover upon investigation that the room had not been rented on the day in question.

21. On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department due to the hostile work environment.

22. Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied.

23. Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity and national origin.

24. Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

25. On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In

October 2023, Plaintiff had a meeting to discuss her transfer request and related

complaints. General Manager Martin denied the request, stating, "You can either

continue working or resign."

26. Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months.

After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts.

However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

27. Director Bovia strongly refused, using profanity before storming out of the meeting.

Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue

working as he would ensure a safe environment. Shortly after Plaintiff raised complaints

of discrimination and a hostile work environment, Director Bovia retaliated by reducing

Plaintiff's 5-day shifts to 4-day shifts, significantly impacting her income and morale.

28. Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different

department at her request, but the transfer was again denied by General Manager Martin

and Director Bovia.

29. On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to

find a large trash bag hidden behind a couch during her room inspection. However,

Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large

trash bag when she entered the room after Plaintiff's inspection. When Plaintiff

confronted Director Bovia about Mr. Christian's statement, Director Bovia denied

bringing any trash bag into the room. Plaintiff suspected that the customer complaints

about the rooms she had inspected might have been influenced by Director Bovia's

involvement.

30. Plaintiff filed a complaint with Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

31. Subsequent to Plaintiff's termination, Plaintiff discovered that Director Bovia made disparaging comments towards Plaintiff and other employees of Jamaican descent. Director Bovia made derogatory comments that "Jamaicans stink and do not take care of themselves."

32. Plaintiff received threatening and derogatory text messages from multiple unknown phone numbers throughout her employment. These messages included slurs such as 'bitch,' 'immigrant,' and 'go back home, bitch.' Upon information and belief, Plaintiff suspects Director Bovia as the source of these communications, as the language and timing align with her known behaviors and statements about Plaintiff. The messages referred to her using slurs such as "bitch," "bald-headed US citizen wannabe bitch," and "immigrant," and included statements like "go back home, bitch." Director Bovia was known to use text messaging applications to send anonymous messages. Upon information and belief, Plaintiff suspects that Director Bovia was the source of these harassing communications.

33. On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that Defendants had investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her

rehiring. However, Plaintiff never received the call.

34. On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

35. Ms. Hudson was subjected to a hostile work environment despite numerous complaints to Defendant's HR department, general manager, and assistant general manager. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact foster a hostile work environment based under Title VII of the Civil Rights Act of 1964, as amended.

36.

In support of her allegation of hostile work environment under 42 U.S.C. § 1981, Ms. Hudson further alleges:

37. Plaintiff is a member of a protected class, an African American and Jamaican woman.

38. Defendants failed multiple times to provide Plaintiff a safe environment. Plaintiff has issued many complaints to Defendants for issues with harassment and discrimination. Despite Defendants' obligation to provide a safe and respectful workplace, Plaintiff experienced ongoing harassment.

39. On March 31, 2023, Plaintiff received a verbal warning for excessive unscheduled absences from March 3 to March 5, 2023. Prior to disclosing her Jamaican ethnicity, Plaintiff informed Assistant Director Bovia that she had suffered a severe allergic

reaction that required hospitalization, but she planned to report to work. Although Plaintiff's doctor advised her to take time off to rest, Plaintiff expressed her desire not to miss work.

40. Assistant Director Bovia instructed Plaintiff to follow her doctor's advice and assured her that she would not be penalized. However, after learning of Plaintiff's national origin, Assistant Director Bovia issued a verbal warning for the absences nearly four weeks after the violations.

41. On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was not promoted to become her assistant as originally informed prior to Plaintiff disclosing her national origin. Plaintiff's verbal warning in her probationary period was an underlying reason for Defendants denying Plaintiff's promotion.

42. Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. However, after Director Bovia became aware of Plaintiff's national origin and ethnicity, Plaintiff was subjected to numerous unfounded complaints. Rooms inspected by Plaintiff were allegedly the subject of customer complaints, claiming the rooms were not clean and that obvious items, such as clothing, had been left in plain sight. On some occasions, Plaintiff was informed of customer complaints about a specific room, only to discover upon investigation that the room had not been rented on the day in question.

43. On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a

transfer to a different department due to the hostile work environment.

44. Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied.

45. Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity and national origin.

46. Defendants subjected Plaintiff to a biased 30-day training program, ostensibly to address performance issues. However, the complaints were discriminatory in nature and lacked factual basis, further contributing to the hostile work environment.

47. On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either continue working or resign."

48. Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

49. Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made

11

for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

50. Despite repeated efforts by Assistant General Manager Dorsey to transfer Plaintiff to another department to alleviate the hostile work environment, her requests were consistently denied by General Manager Martin and Director Bovia, further evidencing retaliation.

51. On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

52. Plaintiff filed a complaint with the Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

53. Plaintiff experienced disparate treatment compared to similarly situated employees of different national origins. For example, Housekeeping Supervisor Jarren (African American) was given the privilege of selecting which floors of the hotel he wanted to inspect, often choosing floors with the fewest rooms to ensure a lighter workload. In contrast, Plaintiff was consistently assigned more difficult and labor-intensive tasks.

Despite receiving similar customer complaints, Supervisor Jarren was not subjected to write-ups, disciplinary actions, or biased training programs. Even when rooms inspected by Supervisor Jarren received customer complaints, he was not subjected to write-ups or disciplinary actions. Additionally, despite these complaints, Supervisor Jarren was never placed on a training program, highlighting the unequal treatment Plaintiff endured.

54. Supervisor Cleo Jonas (Hispanic/Latin) similarly avoided disciplinary action despite receiving customer complaints. On one occasion, Plaintiff was issued a write-up for a customer complaint regarding a room allegedly inspected by her, which was later proven to have been inspected by Supervisor Jonas. Nonetheless, Supervisor Jonas faced no consequences, highlighting the discriminatory treatment. Despite receiving customer complaints, Supervisor Jonas was not subjected to write-ups or disciplinary actions. On one occasion, Director Bovia attempted to issue Plaintiff a write-up for a customer complaint regarding a room believed to have been inspected by Plaintiff. However, it was later discovered that the room in question had been inspected by Supervisor Jonas. Even so, Supervisor Jonas was not issued a write-up. Furthermore, Supervisor Jonas was never placed on a training program, underscoring the unequal treatment Plaintiff faced.

55. Plaintiff received threatening and derogatory text messages from multiple unknown phone numbers throughout her employment. The messages referred to her using slurs such as "bitch," "bald-headed US citizen wannabe bitch," and "immigrant," and included statements like "go back home, bitch." Director Bovia was known to use text messaging applications to send anonymous messages. Upon information and belief, Plaintiff suspects that Director Bovia was the source of these harassing communications.

56. Subsequent to Plaintiff's termination, Plaintiff discovered that Director Bovia made

13

disparaging comments towards Plaintiff and other employees of Jamaican descent. Director Bovia made derogatory comments that "Jamaicans stink and do not take care of themselves."

57. On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

58. On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

59. Ms. Hudson was subjected to a hostile work environment despite numerous complaints to defendant's HR department, general manager, and assistant general manager. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove defendants did in fact foster a hostile work environment based under 42 U.S.C. § 1981.

60.

In support of her allegation of national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e, et seq., Ms. Hudson further alleges:

61. Plaintiff is a member of a protected class, Jamaican woman.

62. Defendants engaged in intentional national origin discrimination in the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Defendants would not have engaged in intentional national origin discrimination against Plaintiff.

63. On March 31, 2023, Plaintiff received a verbal warning for excessive unscheduled absences from March 3 to March 5, 2023. Prior to disclosing her Jamaican ethnicity, Plaintiff informed Assistant Director Bovia that she had suffered a severe allergic reaction that required hospitalization, but she planned to report to work. Although Plaintiff's doctor advised her to take time off to rest, Plaintiff expressed her desire not to miss work.

64. Assistant Director Bovia instructed Plaintiff to follow her doctor's advice and assured her that she would not be penalized. However, after learning of Plaintiff's national origin, Assistant Director Bovia issued a verbal warning for the absences nearly four weeks after the violations.

65. On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was excluded from a promised promotion to Assistant Director of Housekeeping after Assistant Director Bovia was promoted to the Director of Housekeeping. This unjust denial of advancement was not based on merit but on prejudice against Plaintiff's national origin. Plaintiff's verbal warning in her probationary period was an underlying reason for Defendants denying Plaintiff's promotion.

66. Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. However, after Director Bovia became aware of Plaintiff's national origin and ethnicity, Plaintiff was subjected to numerous unfounded complaints. Rooms

inspected by Plaintiff were allegedly the subject of customer complaints, claiming the rooms were not clean and that obvious items, such as clothing, had been left in plain sight. In several instances, Plaintiff discovered that these complaints were fabricated, as the rooms in question had not even been rented on the reported dates.

67. On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department to escape the hostile work environment.

68. Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied, forcing her to continue working under discriminatory conditions.

69. Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity.

70. Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

71. On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either continue working or resign."

72. Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

73. Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

74. Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

75. On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

76. Plaintiff filed a complaint with Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

77. Plaintiff experienced disparate treatment compared to similarly situated employees of different national origins. For example, Housekeeping Supervisor Jarren (African American) was given the privilege of selecting which floors of the hotel he wanted to inspect, often choosing floors with the fewest rooms to ensure a lighter workload. Even when rooms inspected by Supervisor Jarren received customer complaints, he was not subjected to write-ups or disciplinary actions. Additionally, despite these complaints, Supervisor Jarren was never placed on a training program, highlighting the unequal treatment Plaintiff endured.

78. Plaintiff also suffered disparate treatment compared to Supervisor Cleo Jonas (Hispanic/Latin) of Housekeeping. Despite receiving customer complaints, Supervisor Jonas was not subjected to write-ups or disciplinary actions. On one occasion, Director Bovia attempted to issue Plaintiff a write-up for a customer complaint regarding a room believed to have been inspected by Plaintiff. However, it was later discovered that the room in question had been inspected by Supervisor Jonas. Even so, Supervisor Jonas was not issued a write-up. Furthermore, Supervisor Jonas was never placed on a training program, underscoring the unequal treatment Plaintiff faced.

79. Plaintiff received threatening and derogatory text messages from multiple unknown phone numbers throughout her employment. The messages referred to her using slurs such as "bitch," "bald-headed US citizen wannabe bitch," and "immigrant," and included statements like "go back home, bitch." Director Bovia was known to use text messaging applications to send anonymous messages. Upon information and belief, Plaintiff suspects that Director Bovia was the source of these harassing communications.

80. Subsequent to Plaintiff's termination, Plaintiff discovered that Director Bovia made

18

disparaging comments towards Plaintiff and other employees of Jamaican descent. Director Bovia made derogatory comments that "Jamaicans stink and do not take care of themselves."

81. On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

82. On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

83. Ms. Hudson was subjected to national origin discrimination. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional national origin discrimination in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e, et seq.

84.

In support of her allegation of national origin discrimination under 42 U.S.C. § 1981, Ms. Hudson further alleges:

19

85.  Plaintiff is a member of a protected class, Jamaican woman.

86. Defendants engaged in intentional national origin discrimination in the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Defendants would not have engaged in intentional national origin discrimination against Plaintiff.

87. On March 31, 2023, Plaintiff received a verbal warning for excessive unscheduled absences from March 3 to March 5, 2023. Prior to disclosing her Jamaican ethnicity, Plaintiff informed Assistant Director Bovia that she had suffered a severe allergic reaction that required hospitalization, but she planned to report to work. Although Plaintiff's doctor advised her to take time off to rest, Plaintiff expressed her desire not to miss work.

88. Assistant Director Bovia instructed Plaintiff to follow her doctor's advice and assured her that she would not be penalized. However, after learning of Plaintiff's national origin, Assistant Director Bovia issued a verbal warning for the absences nearly four weeks after the violations.

89. On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was excluded from a promised promotion to Assistant Director of Housekeeping after Assistant Director Bovia was promoted to the Director of Housekeeping. This unjust denial of advancement was not based on merit but on prejudice against Plaintiff's national origin. Plaintiff's verbal warning in her probationary period was an underlying reason for Defendants denying Plaintiff's promotion.

90. Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. However, after Director Bovia became aware of Plaintiff's national

origin and ethnicity, Plaintiff was subjected to numerous unfounded complaints. Rooms inspected by Plaintiff were allegedly the subject of customer complaints, claiming the rooms were not clean and that obvious items, such as clothing, had been left in plain sight. In several instances, Plaintiff discovered that these complaints were fabricated, as the rooms in question had not even been rented on the reported dates.

91. On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department to escape the hostile work environment.

92. Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied, forcing her to continue working under discriminatory conditions.

93. Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity.

94. Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

95. On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either

continue working or resign."

96. Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

97. Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

98. Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

99. On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

100.     Plaintiff filed a complaint with Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and

Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

101.    Plaintiff experienced disparate treatment compared to similarly situated employees of different national origins. For example, Housekeeping Supervisor Jarren (African American) was given the privilege of selecting which floors of the hotel he wanted to inspect, often choosing floors with the fewest rooms to ensure a lighter workload. Even when rooms inspected by Supervisor Jarren received customer complaints, he was not subjected to write-ups or disciplinary actions. Additionally, despite these complaints, Supervisor Jarren was never placed on a training program, highlighting the unequal treatment Plaintiff endured.

102.    Plaintiff also suffered disparate treatment compared to Supervisor Cleo Jonas (Hispanic/Latin) of Housekeeping. Despite receiving customer complaints, Supervisor Jonas was not subjected to write-ups or disciplinary actions. On one occasion, Director Bovia attempted to issue Plaintiff a write-up for a customer complaint regarding a room believed to have been inspected by Plaintiff. However, it was later discovered that the room in question had been inspected by Supervisor Jonas. Even so, Supervisor Jonas was not issued a write-up. Furthermore, Supervisor Jonas was never placed on a training program, underscoring the unequal treatment Plaintiff faced.

103.    Subsequent to Plaintiff's termination, Plaintiff discovered that Director Bovia made disparaging comments towards Plaintiff and other employees of Jamaican descent. Director Bovia made derogatory comments that "Jamaicans stink and do not take care of themselves."

104.    Plaintiff received threatening and derogatory text messages from multiple

unknown phone numbers throughout her employment. The messages referred to her using slurs such as "bitch," "bald-headed US citizen wannabe bitch," and "immigrant," and included statements like "go back home, bitch." Director Bovia was known to use text messaging applications to send anonymous messages. Upon information and belief, Plaintiff suspects that Director Bovia was the source of these harassing communications.

105.    On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

106.    On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

107.    Ms. Hudson was subjected to national origin discrimination. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional national origin discrimination in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

108.

In support of her allegation of pregnancy discrimination under the Pregnancy

24

Discrimination Act of 1978, Ms. Hudson further alleges:

109.    Plaintiff was a member of a protected class due to her pregnancy, a condition that qualifies as a temporary disability under federal and state laws.

110.    Upon discovering she was pregnant, Plaintiff promptly informed Defendants and inquired about reasonable accommodations available for pregnant employees.

111.    Assistant General Manager Jordan Dorsey informed me Plaintiff that she does not qualify for the Family Medical Leave Act ("FMLA") due to her tenure being less than one year.

112.    Assistant General Manager Dorsey identified an available Phone Operator position, which would have accommodated Plaintiff's pregnancy by alleviating the physical demands of her current role while maintaining her hourly rate. The position would allow Plaintiff to work while sitting and alleviate the physical demands of her current duties, while maintaining her hourly rate.

113.    Assistant General Manager Dorsey recommended the position change to Defendants. However, Director Bovia and General Manager Martin denied the request for reassignment, failing to provide accommodations that would have enabled Plaintiff to perform her job safely during her pregnancy.

114.    Despite being aware of Plaintiff's pregnancy, Defendants failed to provide reasonable accommodations and instead subjected her to an unreasonable and discriminatory workload. Plaintiff was consistently assigned more rooms to inspect than her colleagues, exacerbating her physical strain. Plaintiff was assigned to inspect more rooms than other employees despite her shift hours being reduced.

115.    When Plaintiff was unable to complete these disproportionate assignments, she

was unfairly written up by Director Bovia, who labeled her as "too slow." This excessive

workload and the subsequent write-ups placed undue stress on Plaintiff, further

exacerbating her hostile work environment

116.    Plaintiff had a meeting with Assistant General Manager Dorsey and Assistant

Director Kasie Releford to discuss her work performance. Plaintiff mentioned that she is

suffering from a hostile work environment due to her pregnancy.

117.    Despite Plaintiff's complaints, she was subjected to a biased 30-day training

program in response to fabricated performance issues that were rooted in discriminatory

treatment.

118.    On or about September 2023, Plaintiff requested another transfer from Ms. Davis

due to the ongoing discrimination, hostile work environment, and retaliation she faced. In

October 2023, Plaintiff had a meeting to discuss her transfer request and related

complaints. General Manager Martin denied the request, stating, "You can either

continue working or resign."

119.    Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several

months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts.

However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

120.    Director Bovia strongly refused, using profanity before storming out of the

meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to

continue working as he would ensure a safe environment. However, after the decision

was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing

Plaintiff's 5-day shifts to 4-day shifts.

121.    Assistant General Manager Dorsey again attempted to transfer Plaintiff to a

different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

122.    On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

123.    Plaintiff filed a complaint with Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

124.    On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that the Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

125.    On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination,

Dorsey stated, "This was definitely wrongful termination on all aspects." When

discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes

right to hit you in ya you know what!"

126.     Ms. Hudson was subjected to pregnancy discrimination. Ms. Hudson alleges that,

through discovery based on these allegations, Plaintiff will prove Defendants did in fact

engage in intentional pregnancy discrimination in the terms and conditions of Plaintiff's

employment under the Pregnancy Discrimination Act of 1978.

127.

In support of her allegation of disability discrimination under the Americans with

Disabilities Act of 1990, Ms. Hudson further alleges:

128.     Plaintiff was a member of a protected class due to her pregnancy, a condition that

qualifies as a temporary disability under federal and state laws.

129.     Upon discovering she was pregnant, Plaintiff promptly informed the Defendants

and inquired about reasonable accommodations available for pregnant employees.

130.     Assistant General Manager Jordan Dorsey informed me Plaintiff that she does not

qualify for the Family Medical Leave Act ("FMLA") due to her tenure being less than

one year.

131.     Assistant General Manager Dorsey discovered the Defendants had an opening

position as a Phone Operator. The position would allow Plaintiff to work while sitting

and alleviate the physical demands of her current duties, while maintaining her hourly

rate.

132.     Assistant General Manager Dorsey recommended the position change to

Defendants. However, Director Bovia and General Manager Martin denied the request

for reassignment, failing to provide accommodations that would have enabled Plaintiff to perform her job safely during her pregnancy.

133.    Throughout Plaintiff's pregnancy, she was subjected to an unreasonable and discriminatory workload. Plaintiff was assigned to inspect more rooms than other employees despite her shift hours being reduced.

134.    When Plaintiff was unable to complete these disproportionate assignments, she was unfairly written up by Director Bovia, who labeled her as "too slow." This excessive workload and the subsequent write-ups placed undue stress on Plaintiff, further exacerbating her hostile work environment

135.    Plaintiff had a meeting with Assistant General Manager Dorsey and Assistant Director Kasie Releford to discuss her work performance. Plaintiff mentioned that she is suffering from a hostile work environment due to her pregnancy.

136.    Despite Plaintiff's complaints, she was subjected to a biased 30-day training program in response to fabricated performance issues that were rooted in discriminatory treatment.

137.    On or about September 2023, Assistant Director Releford organized a gender reveal party for Plaintiff but deliberately chose not to inform Director Bovia, anticipating that Director Bovia would not permit the event. When Director Bovia became aware of the gender reveal party, she was visibly frustrated that it had taken place.

138.    On or about September 2023, Plaintiff requested another transfer from Ms. Davis due to the ongoing discrimination, hostile work environment, and retaliation she faced. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either

continue working or resign."

139.     Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

140.     Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

141.     Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

142.     On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

143.     Plaintiff filed a complaint with the Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and

Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

144.    On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that the Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

145.    On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

146.    Ms. Hudson was subjected to disability discrimination. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional disability discrimination in the terms and conditions of Plaintiff's employment under the Americans with Disabilities Act of 1990.

147.

In support of her allegation of discrimination in pay under the Title VII of the Civil Rights Act of 1964, as amended, Ms. Hudson further alleges:

148.    Plaintiff is a member of a protected class, Jamaican female.

149.    Defendants engaged in intentional national origin discrimination in the terms and

conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Defendants would not have engaged in intentional national origin discrimination against Plaintiff.

150.    On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was not promoted to become her assistant as originally informed prior to Plaintiff disclosing her national origin.

151.    Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. Following the disclosure of her national origin, Plaintiff faced an increase in baseless criticisms. Rooms she inspected allegedly received customer complaints about cleanliness, but upon review, the complaints were proven to lack merit, with some involving rooms that had not been rented.

152.    On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department.

153.    Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied.

154.    Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity.

155.　　　Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

156.　　　On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either continue working or resign."

157.　　　Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

158.　　　Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

159.　　　Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

160.　　　On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia

denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

161.    Plaintiff filed a complaint with the Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

162.    On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that the Defendants' have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

163.    On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

164.    Ms. Hudson was subjected to pay discrimination. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional pay discrimination in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended.

165.

In support of her allegation of discrimination in pay under the 42 U.S.C. § 1981, Ms. Hudson further alleges:

166.        Plaintiff is a member of a protected class, Jamaican female.

167.        Defendants engaged in intentional national origin discrimination in the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Defendants would not have engaged in intentional national origin discrimination against Plaintiff.

168.        On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was not promoted to become her assistant as originally informed prior to Plaintiff disclosing her national origin.

169.        Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. Following the disclosure of her national origin, Plaintiff faced an increase in baseless criticisms. Rooms she inspected allegedly received customer complaints about cleanliness, but upon review, the complaints were proven to lack merit, with some involving rooms that had not been rented.

170.        On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department.

171.        Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director

Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied.

172.    Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity.

173.    Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

174.    On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either continue working or resign."

175.    Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during a 30-day training course.

176.    Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

177.    Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

178.    On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

179.    Plaintiff filed a complaint with the Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

180.    On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that the Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

181.    On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes

right to hit you in ya you know what!"

182.     Ms. Hudson was subjected to pay discrimination. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional pay discrimination in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

183.

In support of her allegation of retaliation under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq., Ms. Hudson further alleges:

184.     Plaintiff is a member of a protected class, Jamaican female.

185.     Defendants engaged in intentional retaliation in the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Defendants would not have engaged in intentional retaliation against Plaintiff.

186.     On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was not promoted to become her assistant as originally informed prior to Plaintiff disclosing her national origin.

187.     Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. However, after Director Bovia became aware of Plaintiff's national origin and ethnicity, Plaintiff was subjected to numerous unfounded complaints. Rooms inspected by Plaintiff were allegedly the subject of customer complaints, claiming the rooms were not clean and that obvious items, such as clothing, had been left in plain sight. On some occasions, Plaintiff was informed of customer complaints about a specific room, only to discover upon investigation that the room had not been rented on the day in question.

188.     On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department.

189.     Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied. Shortly after the meeting, Plaintiff learned she was pregnant and reported her pregnancy to Defendants.

190.     Throughout Plaintiff's pregnancy, she was given an unreasonable workload. Plaintiff was assigned to inspect more rooms than other employees despite her shift hours being reduced. Upon not completing her assignments, Plaintiff would be written up by Director Bovia for being "too slow."

191.     Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity and pregnancy.

192.     Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

193.     On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either

continue working or resign."

194.     Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during the 30-day training course.

195.     Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

196.     Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager Martin and Director Bovia.

197.     On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

198.     Plaintiff filed a complaint with the Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and

Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

199.    Subsequent to Plaintiff's termination, Plaintiff discovered that Director Bovia made disparaging comments towards Plaintiff and other employees of Jamaican descent. Director Bovia stated Jamaicans stink and do not take care of themselves.

200.    On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that the Defendants have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

201.    On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

202.    Ms. Hudson was subjected to retaliation. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional retaliation in the terms and conditions of Plaintiff's employment under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.

203.

In support of her allegation of retaliation under 42 U.S.C. § 1981, Ms. Hudson further

alleges:

204.        Plaintiff is a member of a protected class, Jamaican female.

205.        Defendants engaged in intentional retaliation in the terms and conditions of Plaintiff's employment. Had Plaintiff been a Caucasian employee, Defendants would not have engaged in intentional retaliation against Plaintiff.

206.        On or about April 2023, Assistant Director Bovia was promoted to the Director of Housekeeping. Plaintiff was not promoted to become her assistant as originally informed prior to Plaintiff disclosing her national origin.

207.        Plaintiff's job responsibilities include inspecting and cleaning hotel rooms before they are rented to customers. However, after Director Bovia became aware of Plaintiff's national origin and ethnicity, Plaintiff was subjected to numerous unfounded complaints. Rooms inspected by Plaintiff were allegedly the subject of customer complaints, claiming the rooms were not clean and that obvious items, such as clothing, had been left in plain sight. On some occasions, Plaintiff was informed of customer complaints about a specific room, only to discover upon investigation that the room had not been rented on the day in question.

208.        On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis, expressing her belief that leadership was targeting her. Plaintiff reported experiencing a hostile work environment created by Director Bovia and requested a transfer to a different department.

209.        Plaintiff attended a meeting with General Manager Hailey Martin and Director Bovia to address her complaints. During the meeting, Director Bovia openly stated that she did not want to work with Plaintiff. General Manager Martin informed Director

Bovia that Plaintiff could not be terminated simply because she was disliked. Plaintiff's request for a transfer was denied.

210.    Plaintiff spoke with Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, expressing her belief that she was being discriminated against by Director Bovia due to her ethnicity and national origin.

211.    Plaintiff was subjected to a biased 30-day training program in response to complaints rooted in discrimination.

212.    On or about September 2023, Plaintiff requested a transfer from Ms. Davis due to the hostile work environment, discrimination, and retaliation she was experiencing. In October 2023, Plaintiff had a meeting to discuss her transfer request and related complaints. General Manager Martin denied the request, stating, "You can either continue working or resign."

213.    Plaintiff raised concerns that her usual 8-hour shifts had been reduced for several months. After a meeting with leadership, they decided to return Plaintiff to 8-hour shifts. However, Director Bovia was assigned to train Plaintiff during the 30-day training course.

214.    Director Bovia strongly refused, using profanity before storming out of the meeting. Assistant General Manager Dorsey reassured Plaintiff, encouraging her to continue working as he would ensure a safe environment. However, after the decision was made for Plaintiff to resume 8-hour shifts, Director Bovia retaliated by reducing Plaintiff's 5-day shifts to 4-day shifts.

215.    Assistant General Manager Dorsey again attempted to transfer Plaintiff to a different department at her request, but the transfer was again denied by General Manager

Martin and Director Bovia.

216.     On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a large trash bag hidden behind a couch during her room inspection. However, Houseman employee Christian told Plaintiff that he saw Director Bovia holding the large trash bag when she entered the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia about Mr. Christian's statement, Director Bovia denied bringing any trash bag into the room. Plaintiff suspected that the customer complaints about the rooms she had inspected might have been influenced by Director Bovia's involvement.

217.     Plaintiff filed a complaint with the Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason.

218.     On or about November 12, 2023, Plaintiff encountered Assistant General Manager Dorsey at a Jamaican restaurant. During their conversation, Dorsey informed Plaintiff that the Defendants' have investigated her complaints and concluded that her termination was wrongful. Assistant General Manager Dorsey mentioned his apprehensions in terminating her. Plaintiff was told to expect a call from Defendants' HR department regarding her rehiring. However, Plaintiff never received the call.

219.     On or about January 13, 2024, Plaintiff received a text message from Assistant General Manager Dorsey informing her that Director Bovia had been terminated. Dorsey wrote, "You are amazing! And always have been!" Regarding Plaintiff's termination, Dorsey stated, "This was definitely wrongful termination on all aspects." When

discussing Director Bovia, Dorsey added, "I told you! Once you set someone up, it comes right to hit you in ya you know what!"

220.    Ms. Hudson was subjected to retaliation. Ms. Hudson alleges that, through discovery based on these allegations, Plaintiff will prove Defendants did in fact engage in intentional retaliation in the terms and conditions of Plaintiff's employment under 42 U.S.C. § 1981.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF
#### Title VII of the Civil Rights Act of 1964, as amended, (Hostile Work Environment)

221.

Plaintiff states a cause of action for hostile work environment because of her protected activities against the Defendants as she is protected under Title VII of Civil rights act of 1964, as amended. Plaintiff repeats and re-alleges the allegations contained in paragraph 13, as if fully set forth herein.

222.

Plaintiff is a member of a protected class as she is an African American woman of Jamaican descent.

223.

Defendant has engaged in intentional national origin discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, denial for advancements, and termination all in violation of the Civil Rights Act of 1964.

224.

Defendants failed to fulfill their legal obligation to provide a safe and respectful workplace free from harassment and discrimination. Despite Plaintiff's repeated complaints to Defendants' Human Resources department, general manager, and assistant general manager, the harassment and discriminatory treatment persisted.

225.

The harassment was so severe and pervasive that it affected the term, condition, and/or privilege of Plaintiff's employment with defendant, thus creating an abusive work environment.

226.

After Plaintiff disclosed her national origin, she was subjected to baseless complaints about the rooms she inspected. Allegations were made that the rooms were unclean, often including fabricated claims, such as customer complaints about rooms that had not been rented.

227.

Following Plaintiff's complaints about the hostile work environment created by Director Bovia, the director openly expressed her refusal to work with Plaintiff. This animosity was reinforced when Plaintiff's requests for a transfer were repeatedly denied by General Manager Hailey Martin and other leadership.

228.

Plaintiff was subjected to a biased 30-day training program, allegedly to address performance concerns, despite the discriminatory nature of the complaints against her. Additionally, her shifts were unjustly reduced from five days to four days per week in retaliation for raising concerns about discrimination.

229.

During a meeting to reinstate Plaintiff's 8-hour shifts, Director Bovia used

profanity and left the meeting abruptly. Later, Plaintiff was written up for failing to find a

trash bag allegedly planted by Director Bovia, further exemplifying the hostile and

retaliatory environment.

230.

In April 2023, Assistant Director Bovia was promoted to Director of

Housekeeping. Despite previous assurances, Plaintiff was not promoted to the assistant

position, which was awarded to another individual after Plaintiff disclosed her Jamaican

heritage.

231.

On November 6, 2023, Plaintiff was terminated under the pretext of poor

performance after filing a formal complaint with the Defendants' corporate office. The

termination was the culmination of a pattern of discriminatory and retaliatory actions.

232.

By subjecting Plaintiff to an abusive work environment, Defendants intentionally

or recklessly engaged in an extreme and outrageous course of conduct that caused

Plaintiff significant emotional distress.

233.

Plaintiff's requests for relief are set forth below.

## AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF 42 U.S.C. § 1981 (Hostile Work Environment)

234.

47

Plaintiff states a cause of action for hostile work environment because of her protected activities against the Defendants as she is protected under 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraph 33, as if fully set forth herein.

235.

Plaintiff is a member of a protected class as she is an African American woman of Jamaican descent.

236.

Defendant has engaged in intentional national origin discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to intentional discrimination in harassment, hostile work environment, denial for advancements, and termination all in violation of 42 U.S.C. § 1981.

237.

Defendants failed to fulfill their legal obligation to provide a safe and respectful workplace free from harassment and discrimination. Despite Plaintiff's repeated complaints to Defendants' Human Resources department, general manager, and assistant general manager, the harassment and discriminatory treatment persisted.

238.

The harassment was so severe and pervasive that it affected the term, condition, and/or privilege of Plaintiff's employment with defendant, thus creating an abusive work environment.

239.

After Plaintiff disclosed her national origin, she was subjected to baseless

complaints about the rooms she inspected. Allegations were made that the rooms were unclean, often including fabricated claims, such as customer complaints about rooms that had not been rented.

240.

Following Plaintiff's complaints about the hostile work environment created by Director Bovia, the director openly expressed her refusal to work with Plaintiff. This animosity was reinforced when Plaintiff's requests for a transfer were repeatedly denied by General Manager Hailey Martin and other leadership.

241.

Plaintiff was subjected to a biased 30-day training program, allegedly to address performance concerns, despite the discriminatory nature of the complaints against her. Additionally, her shifts were unjustly reduced from five days to four days per week in retaliation for raising concerns about discrimination.

242.

During a meeting to reinstate Plaintiff's 8-hour shifts, Director Bovia used profanity and left the meeting abruptly. Later, Plaintiff was written up for failing to find a trash bag allegedly planted by Director Bovia, further exemplifying the hostile and retaliatory environment.

243.

In April 2023, Assistant Director Bovia was promoted to Director of Housekeeping. Despite previous assurances, Plaintiff was not promoted to the assistant position, which was awarded to another individual after Plaintiff disclosed her Jamaican heritage.

244.

On November 6, 2023, Plaintiff was terminated under the pretext of poor

performance after filing a formal complaint with Defendants' corporate office. The

termination was the culmination of a pattern of discriminatory and retaliatory actions.

245.

By subjecting Plaintiff to an abusive work environment, Defendants intentionally

or recklessly engaged in an extreme and outrageous course of conduct that caused

Plaintiff significant emotional distress.

246.

Plaintiff's requests for relief are set forth below.

### AS FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF
#### Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e, et seq.
#### (National Origin)

247.

Plaintiff states a cause of action for national origin discrimination because of her

protected activities against the Defendants as she is protected under Title VII of Civil

rights act of 1964, as amended and 42 U.S.C. § 2000e, et seq. Plaintiff repeats and re-

alleges the allegations contained in paragraph 55, as if fully set forth herein.

248.

Plaintiff is a member of a protected class as she is an African American woman of

Jamaican descent.

249.

Defendant has engaged in intentional national origin discrimination in the terms and

conditions of the Plaintiffs' employment, including, but not limited to, subjecting Plaintiffs to a

hostile work environment, intentional discrimination in Plaintiffs' pay, and termination all in violation of the Civil Rights Act of 1964, as amended.

250.

Defendant's conduct violates Title VII.

251.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq, the Plaintiff has been denied employment advancement opportunities providing additional compensation, thereby entitling her to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling her to compensatory damages.

252.

On or about April 2023, Ms. Hudson was unjustly denied a promotion to Assistant Director of Housekeeping following the promotion of Assistant Director Bovia to Director of Housekeeping. Despite being promised this promotion, Plaintiff was excluded due to prejudice against her national origin. This denial was not based on merit or performance, but on discriminatory animus directed at Plaintiff because of her Jamaican heritage.

253.

 After the promotion of Director Bovia, Ms. Hudson's job responsibilities were unfairly scrutinized. She was subjected to numerous unfounded complaints regarding the cleanliness of rooms she inspected. These complaints were fabricated or manipulated, and in several instances, the rooms cited in customer complaints had not even been rented on the dates in question. These actions were linked to Plaintiff's national origin and ethnicity.

254.

Ms. Hudson made multiple complaints about the hostile work environment to Defendants' Human Resources representative, Kendra Davis, and other leadership members, including General Manager Martin and Assistant General Manager Dorsey. Despite Plaintiff's requests for a transfer to escape the hostile environment created by Director Bovia, her requests were denied. Director Bovia openly stated she did not want to work with Plaintiff, which further exemplified the discriminatory nature of the treatment.

255.

On or about November 6, 2023, Ms. Hudson was unjustly issued a write-up for an alleged oversight during a room inspection, which she later discovered was fabricated by Director Bovia. Further, Housekeeping Supervisor Jarren, an African American employee, and Supervisor Cleo Jonas, a Hispanic/Latin employee, were treated more favorably despite receiving similar complaints, which highlights the disparate treatment Plaintiff suffered due to her national origin.

256.

Throughout her employment, Ms. Hudson received derogatory and threatening messages, including slurs such as "bitch," "immigrant," and "go back home," some of which Plaintiff suspects were sent by Director Bovia. Director Bovia was also heard making derogatory comments about Jamaicans, including statements like "Jamaicans stink and do not take care of themselves." These acts of harassment, coupled with the differential treatment, created a hostile and discriminatory work environment.

257.

Ms. Hudson's termination on or about November 6, 2023, was a direct result of her national origin discrimination and her attempts to seek redress. Defendants cited performance issues, such as her inability to complete assignments in a timely manner, as the reason for her

termination, but Plaintiff alleges that this reason was pretextual and that her termination was instead based on her national origin.

258.

In its discriminatory actions as alleged above, the Defendants have acted with malice or reckless indifference to the rights of the above-named Jamaican Plaintiff and thereby entitling her to an award of punitive damages.

259.

Plaintiff's requests for relief are set forth below.

### AS FOR THE FOURTH CAUSE OF ACTION AGAINST DEFENDANT FOR A VIOLATION OF 42 U.S.C. § 1981 (National Origin)

260.

Plaintiff states a cause of action for national origin discrimination because of her protected activities against the Defendants as she is protected under 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraph 77, as if fully set forth herein.

261.

Plaintiff is a member of a protected class as she is an African American woman of Jamaican descent.

262.

Defendant has engaged in intentional national origin discrimination in the terms and conditions of the Plaintiffs' employment, including, but not limited to, subjecting Plaintiffs to a hostile work environment, intentional discrimination in Plaintiffs' pay, and termination all in violation of 42 U.S.C. § 1981.

263.

Defendant's conduct violates Title VII.

264.

By the conduct described above, Defendants intentionally deprived the Plaintiff of the same rights as are enjoyed by other citizens to the creation, performance, enjoyment, and all benefits and privileges, of their employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

265.

On or about April 2023, Ms. Hudson was unjustly denied a promotion to Assistant Director of Housekeeping following the promotion of Assistant Director Bovia to Director of Housekeeping. Despite being promised this promotion, Plaintiff was excluded due to prejudice against her national origin. This denial was not based on merit or performance, but on discriminatory animus directed at Plaintiff because of her Jamaican heritage.

266.

After the promotion of Director Bovia, Ms. Hudson's job responsibilities were unfairly scrutinized. She was subjected to numerous unfounded complaints regarding the cleanliness of rooms she inspected. These complaints were fabricated or manipulated, and in several instances, the rooms cited in customer complaints had not even been rented on the dates in question. These actions were linked to Plaintiff's national origin and ethnicity.

267.

Ms. Hudson made multiple complaints about the hostile work environment to Defendants' Human Resources representative, Kendra Davis, and other leadership members, including General Manager Martin and Assistant General Manager Dorsey. Despite Plaintiff's

requests for a transfer to escape the hostile environment created by Director Bovia, her requests were denied. Director Bovia openly stated she did not want to work with Plaintiff, which further exemplified the discriminatory nature of the treatment.

268.

On or about November 6, 2023, Ms. Hudson was unjustly issued a write-up for an alleged oversight during a room inspection, which she later discovered was fabricated by Director Bovia. Further, Housekeeping Supervisor Jarren, an African American employee, and Supervisor Cleo Jonas, a Hispanic/Latin employee, were treated more favorably despite receiving similar complaints, which highlights the disparate treatment Plaintiff suffered due to her national origin.

269.

Throughout her employment, Ms. Hudson received derogatory and threatening messages, including slurs such as "bitch," "immigrant," and "go back home," some of which Plaintiff suspects were sent by Director Bovia. Director Bovia was also heard making derogatory comments about Jamaicans, including statements like "Jamaicans stink and do not take care of themselves." These acts of harassment, coupled with the differential treatment, created a hostile and discriminatory work environment.

270.

Ms. Hudson's termination on or about November 6, 2023, was a direct result of her national origin discrimination and her attempts to seek redress. Defendants cited performance issues, such as her inability to complete assignments in a timely manner, as the reason for her termination, but Plaintiff alleges that this reason was pretextual and that her termination was instead based on her national origin.

271.

55

In its discriminatory actions as alleged above, the Defendants have acted with malice or reckless indifference to the rights of the above-named Jamaican Plaintiff and thereby entitling her to an award of punitive damages.

272.

Plaintiff's requests for relief are set forth below.

**AS FOR THE FIFTH CAUSE OF ACTION AGAINST
DEFENDANT FOR A VIOLATION OF
Pregnancy Discrimination Act of 1978
(Pregnancy Discrimination)**

273.

Plaintiff states a cause of action for pregnancy discrimination because of her protected activities against the Defendants as she is protected under the Pregnancy Discrimination Act of 1978. Plaintiff repeats and re-alleges the allegations contained in paragraph 99, as if fully set forth herein.

274.

Plaintiff is a member of a protected class due to her pregnancy, a condition that qualifies as a temporary disability under federal and state laws, including the Pregnancy Discrimination Act of 1978.

275.

Defendants have engaged in intentional pregnancy discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to a hostile work environment, intentional discrimination in Plaintiff's pay, and termination all in violation of the Pregnancy Discrimination Act of 1978.

276.

Defendant's conduct violates the Pregnancy Discrimination Act of 1978

277.

Upon discovering her pregnancy, Plaintiff promptly informed Defendants and inquired about reasonable accommodations available for pregnant employees, specifically requesting reassignment to a less physically demanding role to ensure her safety and well-being during her pregnancy.

278.

Upon learning of a vacant Phone Operator position that would allow Plaintiff to work while seated and alleviate the physical demands of her current duties, Assistant General Manager Jordan Dorsey recommended the reassignment. Despite this, Director Bovia and General Manager Hailey Martin denied the request for reassignment, failing to provide reasonable accommodations that would have enabled Plaintiff to safely perform her job during her pregnancy.

279.

Throughout Plaintiff's pregnancy, she was subjected to an unreasonable and discriminatory workload, including being assigned more rooms to inspect than other employees, despite her shift hours being reduced. When Plaintiff was unable to complete these disproportionate assignments, Director Bovia wrote her up, labeling her as "too slow." The excessive workload and subsequent write-ups exacerbated Plaintiff's hostile work environment and caused undue stress during her pregnancy.

280.

Plaintiff raised concerns about the hostile work environment created by her pregnancy. Despite these complaints, she was subjected to a biased 30-day training program based on fabricated performance issues, which were rooted in discriminatory

treatment related to her pregnancy.

281.

In September 2023, Plaintiff requested a transfer due to ongoing discrimination, a hostile work environment, and retaliation she experienced because of her pregnancy. General Manager Martin denied the request, giving Plaintiff an ultimatum to either continue working under discriminatory conditions or resign.

282.

Following her complaint, Director Bovia retaliated by reducing Plaintiff's work schedule from 5 days to 4 days per week, further exacerbating her discriminatory treatment. Despite Assistant General Manager Dorsey's attempts to transfer Plaintiff to another department, the transfer request was denied by General Manager Martin and Director Bovia.

283.

On or about November 6, 2023, Director Bovia issued Plaintiff a write-up for failing to find a trash bag during a room inspection. Plaintiff discovered that Director Bovia had been in the room after her inspection and may have been responsible for the missing item. This write-up was part of a pattern of discriminatory treatment based on Plaintiff's pregnancy.

284.

Plaintiff filed a complaint with Defendants' corporate office alleging discrimination and retaliation. Later that same day, General Manager Martin and Assistant General Manager Dorsey terminated Plaintiff, citing her inability to complete assignments in a timely manner as the stated reason. However, the termination followed

Plaintiff's complaints about discriminatory treatment and was in retaliation for seeking reasonable accommodation due to her pregnancy.

285.

On or about November 12, 2023, Assistant General Manager Dorsey informed Plaintiff that the Defendants have conducted an internal investigation and found that her termination was wrongful. This statement highlights that the reason provided for Plaintiff's termination was pretextual and was motivated by discriminatory animus due to Plaintiff's pregnancy.

286.

During Plaintiff's pregnancy, she was subjected to further discriminatory treatment and harassment, including a biased 30-day training program and a reduced work schedule, all of which were retaliatory and aimed at punishing her for requesting accommodations.

287.

As a result of defendants' discrimination in violation of the Pregnancy Discrimination Act of 1978, Plaintiff is entitled to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling her to compensatory damages.

288.

In its discriminatory actions as alleged above, the Defendants have acted with malice or reckless indifference to the rights of the Plaintiff and thereby entitling her to an award of punitive damages.

289.

59

Plaintiff's requests for relief are set forth below.

### AS FOR THE SIXTH CAUSE OF ACTION AGAINST
### DEFENDANT FOR A VIOLATION OF
### Americans with Disabilities Act of 1990
### (Disability Discrimination)

290.

Plaintiff states a cause of action for pregnancy discrimination because of her protected activities against the Defendants as she is protected under the Americans with Disabilities Act of 1990. Plaintiff repeats and re-alleges the allegations contained in paragraph 118, as if fully set forth herein.

291.

Plaintiff is a member of a protected class due to her pregnancy, which qualifies as a temporary disability under federal and state laws. Plaintiff's pregnancy significantly impacted her ability to perform her job without reasonable accommodations.

292.

Defendants have engaged in intentional disability discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff to a hostile work environment, intentional discrimination in Plaintiff's pay, and termination all in violation of the Americans with Disabilities Act of 1990.

293.

Defendant's conduct violates the Americans with Disabilities Act of 1990.

294.

Upon discovering her pregnancy, Plaintiff promptly informed her employers and

60

inquired about reasonable accommodations for pregnant employees. Plaintiff sought adjustments to her work duties in order to mitigate the physical demands of her position, which became difficult due to her pregnancy.

295.

Plaintiff requested reasonable accommodation in the form of reassignment to a Phone Operator position, which was available within the company. This position would have allowed Plaintiff to perform her duties while sitting, alleviating the physical strain caused by her pregnancy, all while maintaining her current hourly wage. Despite this, Assistant General Manager Jordan Dorsey's recommendation for reassignment was denied by Director Bovia and General Manager Martin. This denial resulted in Plaintiff being unable to perform her job in a safe and reasonable manner during her pregnancy.

296.

Throughout Plaintiff's pregnancy, she was subjected to an unreasonable and discriminatory workload, including being assigned more rooms to inspect than other employees, despite her shift hours being reduced. When Plaintiff was unable to complete these disproportionate assignments, Director Bovia wrote her up, labeling her as "too slow." The excessive workload and subsequent write-ups exacerbated Plaintiff's hostile work environment and caused undue stress during her pregnancy.

297.

Throughout Plaintiff's pregnancy, she was subjected to a disproportionate and discriminatory workload. Plaintiff was assigned more room inspections than her colleagues, despite her hours being reduced. When Plaintiff was unable to complete these disproportionate tasks, she was unfairly written up by Director Bovia, who labeled her as

"too slow." The excessive workload, combined with the write-ups, placed significant stress on Plaintiff and exacerbated her condition, further contributing to a hostile work environment.

298.

Plaintiff raised concerns about the hostile work environment she was facing due to her pregnancy. In response, she was subjected to a biased 30-day training program based on fabricated performance issues rooted in discriminatory treatment. Despite these complaints, Plaintiff continued to be subjected to retaliatory actions, including the denial of her transfer requests and her reassignment to a new department, both of which were denied by General Manager Martin and Director Bovia.

299.

On November 6, 2023, Director Bovia issued Plaintiff a write-up for allegedly failing to find a large trash bag during a room inspection, a write-up that Plaintiff believes was based on false claims. Plaintiff learned that Director Bovia had been in the room after her inspection and may have been responsible for the missing trash bag. When Plaintiff confronted Director Bovia about this, Bovia denied bringing the trash bag into the room, but Plaintiff suspected that the customer complaints about her inspections were influenced by Director Bovia's actions.

300.

Later that same day, after Plaintiff filed a formal complaint about the discrimination and retaliation, she was terminated by General Manager Martin and Assistant General Manager Dorsey, citing her inability to complete assignments in a timely manner. This reason was a pretext for Plaintiff's unlawful termination, which

62

occurred in retaliation for her complaints and requests for accommodations due to her pregnancy.

301.

On or about November 12, 2023, Assistant General Manager Dorsey informed Plaintiff during a conversation that Defendants' internal investigation had concluded that her termination was wrongful. Dorsey expressed concern about the termination and told Plaintiff to expect a call from Defendants' HR department regarding her rehiring, although Plaintiff never received the call.

302.

On or about January 13, 2024, Assistant General Manager Dorsey contacted Plaintiff again, stating that Director Bovia had been terminated, and that Plaintiff's termination had been wrongful. Dorsey further commented, "You are amazing! And always have been!" regarding Plaintiff's performance and acknowledged that Plaintiff had been subjected to wrongful termination on all aspects.

303.

As a result of defendants' discrimination in violation of the Americans with Disabilities Act of 1990, Plaintiff is entitled to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of defendant's actions, thereby entitling her to compensatory damages.

304.

In its discriminatory actions as alleged above, the Defendants have acted with malice or reckless indifference to the rights of the Plaintiff and thereby entitling her to an award of punitive damages.

305.

Plaintiff's requests for relief are set forth below.

### AS FOR THE SEVENTH CAUSE OF ACTION AGAINST
### DEFENDANT FOR A VIOLATION OF
#### Title VII of the Civil rights Act of 1964, as amended
#### (Pay Discrimination)

306.

Plaintiff states a cause of action for pay discrimination because of her protected activities

against the Defendants as she is protected under the Title VII of the Civil rights Act of 1964, as

amended. Plaintiff repeats and re-alleges the allegations contained in paragraph 138, as if fully

set forth herein.

307.

Plaintiff is a member of a protected class based on her national origin (Jamaican). As a

Jamaican, Plaintiff is protected from discrimination in pay based on her national origin.

308.

Plaintiff alleges that Defendants engaged in intentional national origin discrimination

with respect to her pay, specifically in relation to her promotion and compensation. Had

Plaintiff been a Caucasian employee, Defendants would not have subjected her to the

discriminatory treatment she experienced, which included being denied the opportunity for

promotion and facing lower pay compared to similarly situated employees.

309.

On or about April 2023, Assistant Director Bovia was promoted to the position of

Director of Housekeeping. Plaintiff had been informed prior to disclosing her national origin

that she would be promoted to an assistant position to Bovia, but after Plaintiff disclosed her

national origin, she was not promoted as originally planned. Plaintiff's qualifications and work performance did not change; however, her national origin became a basis for denying her the promotion she rightfully deserved.

310.

After disclosing her national origin, Plaintiff was subjected to an increase in baseless criticisms. Despite performing her job duties as required, including inspecting and cleaning hotel rooms, Plaintiff's work was unfairly criticized. Complaints from customers about the cleanliness of rooms Plaintiff inspected were proven to be unfounded upon further review, and in some instances, the complaints involved rooms that had not even been rented. These criticisms were a direct consequence of Plaintiff's national origin and were aimed at undermining her work performance and justifying the denial of fair compensation.

311.

On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis to report her belief that leadership was targeting her and creating a hostile work environment due to her national origin. Despite this report, Plaintiff's request for a transfer to a different department was denied, and she was subjected to further retaliation, including biased training programs and reductions in her work shifts. These actions were part of an ongoing pattern of retaliation in response to Plaintiff's complaints about discriminatory treatment.

312.

Plaintiff repeatedly requested transfers due to the hostile work environment and discrimination she faced but was denied on multiple occasions. In particular, her request for a transfer to another department was denied by General Manager Martin and Director Bovia in October 2023, even after Plaintiff voiced concerns about the hostile treatment she was enduring.

313.

On November 6, 2023, Plaintiff was issued a write-up by Director Bovia for allegedly failing to find a large trash bag during a room inspection. However, Plaintiff was informed by a fellow employee that Director Bovia had placed the trash bag in the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia, Bovia denied the allegations. Plaintiff suspects that the customer complaints about her inspections were influenced by Director Bovia's actions and that the write-up was pretextual.

314.

Subsequently, Plaintiff was terminated on the same day by General Manager Martin and Assistant General Manager Dorsey, who cited Plaintiff's inability to complete assignments in a timely manner. This reason was a pretext for Plaintiff's unlawful termination, which was rooted in discrimination and retaliation based on her national origin and sex.

315.

After her termination, Plaintiff learned through Assistant General Manager Dorsey that the Defendants have concluded her termination was wrongful. Dorsey expressed his concerns about the termination and mentioned that Plaintiff should expect a call from Defendants' HR department regarding potential rehiring. However, Plaintiff never received such a call. Dorsey later confirmed in a text message that Director Bovia had been terminated, and that Plaintiff's termination had been wrongful, further admitting the discriminatory treatment she had experienced.

316.

Plaintiff was subjected to discrimination based on her national origin. She was denied promotions and opportunities for career advancement, which directly impacted her pay and

compensation. These actions were part of a broader pattern of discriminatory treatment that aimed to undermine Plaintiff's professional growth and economic opportunities based on her national origin.

317.

Plaintiff's requests for relief are set forth below.

<b><u>AS FOR THE EIGHTH CAUSE OF ACTION AGAINST<br>
DEFENDANT FOR A VIOLATION OF<br>
42 U.S.C. § 1981<br>
(Pay Discrimination)</u></b>

318.

Plaintiff states a cause of action for pay discrimination because of her protected activities against the Defendants as she is protected under 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the allegations contained in paragraph 156, as if fully set forth herein.

319.

Plaintiff is a member of a protected class based on her national origin (Jamaican). As a Jamaican, Plaintiff is protected from discrimination in pay based on her national origin.

320.

Plaintiff alleges that Defendants engaged in intentional national origin discrimination with respect to her pay, specifically in relation to her promotion and compensation. Had Plaintiff been a Caucasian employee, Defendants would not have subjected her to the discriminatory treatment she experienced, which included being denied the opportunity for promotion and facing lower pay compared to similarly situated employees.

321.

On or about April 2023, Assistant Director Bovia was promoted to the position of Director of Housekeeping. Plaintiff had been informed prior to disclosing her national origin

67

that she would be promoted to an assistant position to Bovia, but after Plaintiff disclosed her national origin, she was not promoted as originally planned. Plaintiff's qualifications and work performance did not change; however, her national origin became a basis for denying her the promotion she rightfully deserved.

322.

After disclosing her national origin, Plaintiff was subjected to an increase in baseless criticisms. Despite performing her job duties as required, including inspecting and cleaning hotel rooms, Plaintiff's work was unfairly criticized. Complaints from customers about the cleanliness of rooms Plaintiff inspected were proven to be unfounded upon further review, and in some instances, the complaints involved rooms that had not even been rented. These criticisms were a direct consequence of Plaintiff's national origin and were aimed at undermining her work performance and justifying the denial of fair compensation.

323.

On or about May 19, 2023, Plaintiff contacted Human Resources representative Kendra Davis to report her belief that leadership was targeting her and creating a hostile work environment due to her national origin. Despite this report, Plaintiff's request for a transfer to a different department was denied, and she was subjected to further retaliation, including biased training programs and reductions in her work shifts. These actions were part of an ongoing pattern of retaliation in response to Plaintiff's complaints about discriminatory treatment.

324.

Plaintiff repeatedly requested transfers due to the hostile work environment and discrimination she faced but was denied on multiple occasions. In particular, her request for a transfer to another department was denied by General Manager Martin and Director Bovia in

October 2023, even after Plaintiff voiced concerns about the hostile treatment she was enduring.

325.

On November 6, 2023, Plaintiff was issued a write-up by Director Bovia for allegedly failing to find a large trash bag during a room inspection. However, Plaintiff was informed by a fellow employee that Director Bovia had placed the trash bag in the room after Plaintiff's inspection. When Plaintiff confronted Director Bovia, Bovia denied the allegations. Plaintiff suspects that the customer complaints about her inspections were influenced by Director Bovia's actions and that the write-up was pretextual.

326.

Subsequently, Plaintiff was terminated on the same day by General Manager Martin and Assistant General Manager Dorsey, who cited Plaintiff's inability to complete assignments in a timely manner. This reason was a pretext for Plaintiff's unlawful termination, which was rooted in discrimination and retaliation based on her national origin and sex.

327.

After her termination, Plaintiff learned through Assistant General Manager Dorsey that the Defendants have concluded her termination was wrongful. Dorsey expressed his concerns about the termination and mentioned that Plaintiff should expect a call from Defendants' HR department regarding potential rehiring. However, Plaintiff never received such a call. Dorsey later confirmed in a text message that Director Bovia had been terminated, and that Plaintiff's termination had been wrongful, further admitting the discriminatory treatment she had experienced.

328.

Plaintiff was subjected to discrimination based on her national origin. She was denied

promotions and opportunities for career advancement, which directly impacted her pay and compensation. These actions were part of a broader pattern of discriminatory treatment that aimed to undermine Plaintiff's professional growth and economic opportunities based on her national origin.

329.

Plaintiff's requests for relief are set forth below.

**AS FOR THE NINTH CAUSE OF ACTION AGAINST**
**DEFENDANT FOR A VIOLATION OF**
**Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. § 2000e _et seq_**
**(Retaliation)**

330.

Plaintiff states a cause of action for retaliation because of her protected activities against the Defendants as she is protected under Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e _et seq_. Plaintiff repeats and re-alleges the allegations contained in paragraph 174, as if fully set forth herein.

331.

Defendant's conduct violates Title VII.

332.

Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, by reporting discrimination and a hostile work environment to Human Resources representative Kendra Davis on May 19, 2023. Plaintiff expressed her belief that leadership, including Director Bovia, was targeting her based on her national origin (Jamaican) and ethnicity. Plaintiff continued to report discriminatory treatment, retaliation, and a hostile work environment

333.

70

After engaging in protected activity, Plaintiff experienced a series of adverse employment actions, including but not limited to:

334.

Being denied promotion opportunities after disclosing her national origin in April 2023. Receiving baseless complaints about the quality of her work. Being assigned an unreasonable workload during her pregnancy while facing reduced shift hours. Being subjected to a biased 30-day training program and increased scrutiny. Having her requests for transfer to a different department denied multiple times. Having her shifts reduced from five days per week to four days per week in retaliation for reporting discriminatory treatment. Receiving a pretextual write-up for failing to find a trash bag that had been placed in a room after her inspection. Being terminated on November 6, 2023, on the pretext of failing to complete assignments in a timely manner.

335.

The adverse actions taken against Plaintiff occurred shortly after she engaged in protected activity. Specifically: Following her May 19, 2023, complaint to Human Resources, Plaintiff's workload was increased, and her shifts were reduced. Director Bovia openly expressed hostility towards Plaintiff, stating that she did not want to work with her. Plaintiff's termination occurred on the same day she filed a complaint with Defendants' corporate office alleging discrimination and retaliation.

336.

Defendant's retaliatory actions included creating an unreasonable workload, denying Plaintiff's transfer requests, issuing unwarranted write-ups, and ultimately terminating her employment. These actions were intended to punish Plaintiff for reporting discrimination and to

discourage her and other employees from engaging in protected activity under Title VII.

337.

After Plaintiff's termination, Assistant General Manager Dorsey confirmed that Plaintiff's termination was wrongful, and that the Defendants have investigated and substantiated her claims. Despite assurances from Dorsey that Defendants would contact Plaintiff regarding rehiring, Plaintiff never received any follow-up from the company.

338.

Dorsey admitted via text message on January 13, 2024, that Director Bovia had been terminated for her actions and reiterated that Plaintiff's termination was wrongful. This admission highlights the retaliatory and unjustified nature of Plaintiff's termination.

339.

Defendant has engaged in intentional retaliation discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, subjecting Plaintiff a hostile work environment, intentional discrimination in Plaintiff's pay, and termination all in violation of the Civil Rights Act of 1964.

340.

As a result of defendant's discrimination in violation of 42 U.S.C. § 2000e et seq., the Plaintiff has been denied intentional discrimination in pay and unlawful termination, thereby entitling her to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of defendant's actions, thereby entitling her to compensatory damages.

341.

In its discriminatory actions as alleged above, Defendants have acted with malice or

reckless indifference to the rights of the above-named Jamaican employee and thereby entitling

her to an award of punitive damages.


## AS FOR THE TENTH CAUSE OF ACTION AGAINST
## DEFENDANT FOR A VIOLATION OF
## 42 U.S.C. § 1981
## (Retaliation)

342.

Plaintiff states a cause of action for retaliation because of her protected activities against

the Defendants as she is protected under 42 U.S.C. § 1981. Plaintiff repeats and re-alleges the

allegations contained in paragraph 194, as if fully set forth herein.

343.

Plaintiff is a Jamaican female and a member of a protected class under 42 U.S.C. § 1981,

which prohibits racial discrimination and retaliation in employment.

344.

Plaintiff engaged in protected activity by: Reporting discriminatory treatment and a

hostile work environment based on her national origin and ethnicity to Defendants' Human

Resources representative on May 19, 2023. Expressing her belief to management, including

Assistant General Manager Jordan Dorsey and Assistant Director Kasie Releford, that she was

being targeted and discriminated against by Director Bovia due to her ethnicity and national

origin. Filing a formal complaint with Defendants' corporate office on November 6, 2023,

alleging discrimination and retaliation.

345.

In retaliation for engaging in protected activity, Plaintiff was subjected to a series of

adverse employment actions, including but not limited to: Denial of a promotion to Assistant

Director of Housekeeping, despite prior indications that she would be promoted. Increased and unreasonable scrutiny of her work, including unfounded complaints and fabricated claims regarding the cleanliness of hotel rooms she inspected. Being subjected to a biased 30-day training program following complaints rooted in discriminatory motives. Having her shift schedule reduced from 5 days to 4 days per week after resuming 8-hour shifts. Multiple denials of her transfer requests to escape the hostile work environment. Receiving a baseless write-up for allegedly failing to identify a trash bag intentionally placed in a room after her inspection. Termination on November 6, 2023, purportedly for her inability to complete assignments in a timely manner.

346.

There is a clear temporal and factual connection between Plaintiff's protected activity and the adverse actions taken against her, including: Escalation of retaliatory conduct by Director Bovia immediately following Plaintiff's complaint to Human Resources on May 19, 2023. Termination on the same day Plaintiff filed a formal complaint with Defendants' corporate office alleging discrimination and retaliation.

347.

After Plaintiff's termination, Assistant General Manager Jordan Dorsey admitted: That Defendants' investigation concluded Plaintiff's termination was wrongful. That Plaintiff's termination was influenced by retaliatory motives, as evidenced by Dorsey's January 13, 2024, text message acknowledging the wrongful nature of Plaintiff's termination and praising Plaintiff's character and work performance.

348.

Defendants through its agents and employees, including Director Bovia and General

74

Manager Hailey Martin, engaged in intentional retaliation against Plaintiff for asserting her

rights under 42 U.S.C. § 1981. This retaliation was motivated by Plaintiff's protected activity

and her membership in a protected class.

349.

Defendant treated Plaintiff less favorably than similarly situated Caucasian employees.

Had Plaintiff been a Caucasian employee, Defendants would not have retaliated against her by

denying promotions, increasing her workload, denying transfer requests, fabricating complaints,

or terminating her employment.

350.

As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered

economic losses, emotional distress, and reputational harm. Plaintiff has also incurred attorney's

fees and costs in pursuing this action.

351.

Plaintiff's requests for relief are set forth below.

## ADMINISTRATIVE PROCEDURES

1.

On or about May 22, 2024, the Plaintiff filed a timely Charge of Discrimination against

Aimbridge Hospitality, LLC, alleging discrimination with the Equal Employment Opportunity

Commission ("EEOC"). (A true and accurate copy of EEOC Charge of Discrimination # 461-

2024-00391, is attached hereto as "Exhibit A")


2.

On or about September 26, 2024, the EEOC issued a "Dismissal and Notice of Rights"

letter for her Charge of Discrimination. On or about September 26, 2024 Plaintiff received this letter. (A true and accurate copy of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2024-00391, is attached hereto as "Exhibit B".

3.

To remedy the violations of the rights of the Plaintiff, plaintiff requests that the Court award her the relief prayed for below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Kacey Hudson prays for the following relief:

1.

That the practices of Defendants complained of herein be determined and adjudged to be in violation of the rights of Ms. Hudson under Title VII, the PDA; the ADA, 42 U.S.C. § 1981, Louisiana Revised Statute §23:631-632, and  any other cause(s) of action that can be inferred from the facts set forth herein;

2.

All damages which Ms. Hudson has sustained as a result of Defendant's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendant's unlawful and retaliatory conduct;

3.

An award to Plaintiff of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

4.

An award representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Ms. Hudson her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiff of compensatory and punitive damages against Defendant, including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

## **JURY DEMAND**

Ms. Hudson demands a trial by jury of all issues do triable in this action.


Respectfully submitted this 24th day of December 2024.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Christopher A. Minias*
**Christopher A. Minias (#36230)**
1615 Poydras Street

77

Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com

## SERVICE INFORMATION

Plaintiff mailed this day, December 24, 2024, by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendants' agent: C T Corporation System 3867 Plaza Tower Drive, Baton Rouge, LA 70816. Plaintiff also filed with this Court an unsigned summons.

*/s/ Christopher Minias*
CHRISTOPHER MINIAS